# UNITED STATES DISTRICT COURT
for the
Southern District of California

FILED
JUN 14 2019
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____mc_____ DEPUTY

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )  Case No.  **19MJ9761**
One (1) Black Motorola Cellular Phone, MODEL: )
Moto E5 Play; IMEI Number 351841094216886 )
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A (incorporated herein)

located in the __Southern__ District of __California__, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B (incorporated herein)

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 21, U.S.C. § 841(a)(1) | Possession of a controlled substance with intent to distribute |

The application is based on these facts:

See Affidavit of Special Agent Jessica Hutnik

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_/s/ Jessica Hutnik_
Applicant's signature

Special Agent Jessica Hutnik, DEA
Printed name and title

Sworn to before me and signed in my presence.

Date: __06/14/2019__

_/s/ Ruth Bermudez Montenegro_
Judge's signature

City and state: __El Centro, California__      Hon. Ruth Bermudez Montenegro, U. S. Magistrate Judge
Printed name and title

# ATTACHMENT A

## PROPERTY TO BE SEARCHED

The following property is to be searched:

>One (1) black Motorola cellular device
>Model: Moto E5 Play
>IMEI: 351841094216886
>Serial: ZY323F9LRD
>**(Target Device)**;

**Target Device** is currently in the possession of the Drug Enforcement Administration, 2425 LaBrucherie Rd, Imperial, California, and held in the secure evidence vault.

## ATTACHMENT B

### ITEMS TO BE SEIZED

Authorization to search the cellular/mobile telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone for evidence described below. The seizure and search of the cellular/mobile telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular/mobile telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of November 7, 2018 to February 8, 2019:

a. tending to indicate efforts to import methamphetamine, or some other controlled substances from Mexico into the United States, or possess and/or transport with the intent to distribute controlled substances within the United States;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of methamphetamine, or some other controlled substances from Mexico into the United States, or possession and/or transportation with the intent to distribute controlled substances within the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in importation of methamphetamine, or some other controlled substances from Mexico into the United States, or possession and/or transportation with the intent to distribute controlled substances within the United States;

d. tending to identify travel to or presence at locations involved in the importation of methamphetamine, or some other controlled substances from Mexico into the United States, or possession and/or transportation with the intent to distribute controlled substances within the United States, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the subject telephone; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

**which are evidence of violations of 21 U.S.C. §§ 841 and 846.**

# AFFIDAVIT

I, Jessica Hutnik, Special Agent with the Drug Enforcement Administration (DEA), being duly sworn, declare and state:

## INTRODUCTION

1. I make this affidavit in support of an application for a warrant to search the following electronic device, as further described in Attachment A (referred to herein as the "**Target Device**"), and seize evidence of crimes, specifically, violations of Title 21, United States Code, Sections 841, 846, as more particularly described in Attachment B:

    a. Black Motorola cellular device
       Model: Moto E5 Play
       IMEI: 351841094216886
       Serial: ZY323F9LRD
       (**Target Device**)

This search supports an investigation and prosecution of Jesus Manuel Verduzco (VERDUZCO) for one or more of the crimes mentioned above. A factual explanation supporting probable cause follows.

2. United States Border Patrol Agents located the **Target Device** in the vehicle VERDUZCO was driving, and DEA Agents seized the **Target Device** from VERDUZCO at the time of his arrest for possession of a controlled substance with the intent to distribute on February 7, 2019. The **Target Device** is currently stored at the DEA Imperial County District Office Evidence Vault, located in Imperial, California.

3. Based on the information below, there is probable cause to believe that a search of the **Target Device** will produce evidence of the aforementioned crimes, as further described in Attachment B.

4. The information contained in this affidavit is based upon my experience and training, consultation with other federal, state, and local law enforcement agents. The evidence and information contained herein was developed from interviews and my review of documents and evidence related to this case. Because this affidavit is made

for the limited purpose of obtaining a search warrant for the **Target Device**, it does not contain all of the information known by me or other federal agents regarding this investigation, but only contains those facts believed to be necessary to establish probable cause. Dates, times and amounts are approximations unless otherwise noted.

## EXPERIENCE AND TRAINING

5. I am employed as a Special Agent with the DEA and have so been employed since July 2018. I am currently assigned to the Imperial County District Office (ICDO) Enforcement Group 53. Upon being hired as a DEA Special Agent, I attended a sixteen week DEA academy in Quantico, Virginia, where I received training in all aspects of narcotics investigations, including, but not limited to, the enforcement of drug laws, investigation of drug trafficking, drug recognition and terminology, case management undercover operations, interviewing techniques, the gathering of evidence, preservation of a crime scene, and the use of electronic surveillance.

6. Prior to being employed with the DEA, I earned a Bachelor of Arts degree in Criminal Justice from Norwich University as well as a Master's degree in Public Administration from American Military University. I was employed as a Tucson Police Officer from 2011-2014. While employed with the Tucson Police Department, I attended the Southern Law Enforcement Training Center located in Tucson, AZ. My primary responsibilities as a patrol officer were to respond to calls for service as well as conducting various investigations to include narcotics investigations. From 2014-2018, I was employed with the Hazleton Police Department located in Hazleton, PA. During my employment I attended "Top Gun" which is a week-long narcotics investigation training held in Fort Indiantown Gap, PA. My primary responsibilities as a Hazleton Police Officer included responding to calls for service as well as conducting various investigations to include narcotics investigations.

7. In connection with my official DEA duties, I investigate criminal violations of federal drug laws and related offenses, including violations of Title 21,

United States Code, 801 *et seq.* and the Federal Controlled Substance Act. I have received training, both formal and informal.

8. Based on my training and experience, I have become familiar with the methods utilized in narcotics trafficking operations and the unique trafficking patterns employed by narcotics organizations. I have also spoken with senior agents as well as other senior law enforcement officers, about their experiences and the results of their investigations and interviews. I know that drug traffickers often require the use of a communication facility to negotiate times, places, schemes and manners for importing, possessing, concealing, manufacturing and distributing controlled substances and for arranging the disposition of proceeds from the sales of controlled substances. I know that professional drug operations depend upon maintaining their extensive contacts. The communication facility enables drug dealers to maintain contact with drug associates, drug suppliers and drug customers. I also know that drug traffickers sometimes use fraudulent information, such as nominee names and false addresses, to subscribe to communication facilities, especially emails, cellular phones, messaging apps and frequently use communication facilities to thwart law enforcement efforts to intercept their communications.

9. Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in narcotics smuggling investigations, I am also aware that:

 a. Drug traffickers will use cellular telephones because they are mobile and they have instant access to telephone calls, text, web, and voice messages;

 b. Drug traffickers will use cellular telephones and GPS devices because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit;

 c. Drug traffickers and their accomplices will use cellular telephones and GPS devices because they can easily arrange

3

and/or determine what time their illegal cargo will arrive at predetermined locations;

d. Drug traffickers will use cellular telephones and GPS devices to direct drivers to synchronize an exact drop off and/or pick up time of their illegal cargo;

e. Drug traffickers will use cellular telephones to notify or warn their accomplices of law enforcement activity to include the presence and posture of marked and unmarked units, as well as the operational status of checkpoints and border crossings;

f. The use of cellular telephones by drug traffickers tends to generate evidence that is stored on the cellular telephones, including, but not limited to emails, text messages, photographs, audio files, call logs, address book entries, IP addresses, social network data, and location data; and

g. The use of GPS devices by smugglers tends to generate evidence that is stored on the GPS, including, but not limited to address book entries, search history, user profiles and passwords, location history, routes, contacts, saved addresses–tending to indicate who used or controlled the GPS device, and other digital information.

10. Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in drug trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular/mobile telephones can and often do contain electronic records, phone logs and contacts, voice and text communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. I also know that GPS devices can and often do contain electronic records and data such as contacts location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone. Specifically, I know based upon my training, education, and experience investigating these conspiracies that searches of cellular/mobile telephones and GPS devices yields evidence:

4

  a. tending to identify attempts to transport cocaine or some other controlled substance from South and Central America to Mexico and eventually into the United States;

  b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the transportation of cocaine or some other controlled substance from South and Central America to Mexico and eventually into the United States;

  c. tending to identify co-conspirators, criminal associates, or others involved in the transportation of cocaine or some other controlled substance from South and Central America to Mexico and eventually into the United States;

  d. tending to identify travel to or presence at locations involved in the transportation of cocaine or some other controlled substance from South and Central America to Mexico and eventually into the United States, such as pickup, transfer, and delivery locations, along with the refueling points throughout the smuggling venture;

  e. tending to identify the user of, or persons with control over or access to, the target device; and/or

  f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

11. Subscriber Identity Module (SIM) Cards, also known as subscriber identity modules, are smart cards that store data for GSM cellular telephone subscribers. Such data includes user identity, location and phone number, network authorization data, personal security keys, contact lists and stored text messages. Some of the evidence generated by a smuggler's use of a cellular telephone would likely be stored on any SIM Card that has been utilized in connection with that telephone.

12. In preparing this affidavit, I have conferred with other agents and law enforcement personnel who are experienced in the area of drug trafficking investigations, and the opinions stated here are shared by them. Further, I have personal

knowledge of the following facts, or have had them related to me by persons mentioned in this affidavit.

## FACTS SUPPORTING PROBABLE CAUSE

13. According to a report prepared by United States Border Patrol Agent (BPA) David Weems, on February 7, 2019, BPA Weems and his Human Narcotics Detection Dog (HNDD) "Rex" were assigned to the Highway 86 Border Patrol Checkpoint, located near Westmorland, California. At approximately 12:50 P.M., a blue Hyundai Sonata, driven by a male later identified as VERDUZCO, approached the primary inspection area. As the BPA assigned to primary, BPA Meza questioned the occupant of the vehicle, while BPA Weems and Rex conducted a canine sniff of the exterior of the vehicle. During the sniff, Rex alerted near the driver's side front and rear doors. BPA Weems requested that BPA Meza refer the vehicle to secondary inspection.

14. BPA Weems also reported that while in secondary inspection, BPA Olivares obtained consent from VERDUZCO to conduct a search of the vehicle. BPA Weems and Rex conducted a second sniff of the vehicle. During the sniff, Rex displayed an alert to the back seat area on the driver's side of the vehicle.

15. BPA Weems reported that following the second alert, he conducted a non-intrusive search of the vehicle using a density meter, commonly referred to as a "Buster." During the non-intrusive search of the back seats, BPA Weems received what he recognized to be an abnormally high reading. BPA Weems proceeded to lower the back seat and lift the material from the back of the seat to look underneath. BPA Weems saw that the metal piece that supports the back seat had been cut. He lifted the metal piece and saw plastic packages underneath. A subsequent search of the vehicle yielded 16 individually wrapped packages, which contained a white crystal-like substance that tested positive for the characteristics of methamphetamine, and all together weighed a total of 18.42 kilograms (40.60 pounds).

16. On February 7, 2019, at approximately 2:00 P.M., Agents from the DEA were notified by USBP and subsequently responded to the USBP Highway 86 Checkpoint. At approximately 5:34 P.M., VERDUZCO was read his Miranda Rights in the Spanish language verbatim from a DEA-13B card. Subsequently, VERDUZCO waived those rights and stated he had no knowledge of the narcotics concealed inside of his vehicle.

17. VERDUZCO was arrested for 21 USC 841 (a)(1) possession with intent to distribute a controlled substance, following the discovery of the narcotics concealed inside of his vehicle. Incident to the arrest of VERDUZCO, **Target Device** was seized by federal authorities. At the time of VERDUZCO's detainment by USBP, **Target Device** was on the dashboard of the vehicle and VERDUZCO was watching a movie on **Target Device**.

18. On February 8, 2019, the Honorable William V. Gallo, United States Magistrate Judge, signed a criminal complaint charging VERDUZCO with possession of a controlled substance with intent to distribute, in violation of Title 21, United States Code, Sections 841 and 846.

19. I know that recent calls made and received, telephone numbers, contact names, electronic mail (e-mail) addresses, appointment dates, text messages, pictures and other digital information are stored in the memory of the **Target Device,** which may identify other persons involved in narcotics trafficking activities. Accordingly, based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that information relevant to the narcotics smuggling activities of VERDUZCO, such as telephone numbers, made and received calls, contact names, electronic mail (e-mail) addresses, appointment dates, messages, pictures and other digital information are stored in the memory of the **Target Device**.

20. Based on my training and experience along with other law enforcement officers' training and experience, I know that narcotics trafficking activities entail

7

intricate planning to successfully evade detection by law enforcement. In my professional experience and in the professional experience of other agents with whom I have spoken, this requires planning and coordination in the weeks and often months prior to the event. For example, drug trafficking organizations (DTOs) recruit, evaluate, and supply load drivers with vehicles and phones, and drug smugglers are often asked to cross a vehicle several times to establish a pattern. Additionally, co-conspirators are often unaware of the subject's arrest and will continue to attempt to communicate with the subject after the arrest to determine the whereabouts of their valuable cargo. This communication, both prior to, during and after the event is often accomplished/attempted via cellular telephone communication(s). Therefore, I respectfully request permission to search the **Target Device** for items listed in Attachment B beginning on November 7, 2018, up to and including February 8, 2019.

## METHODOLOGY

21. It is not possible to determine, merely by knowing the cellular/mobile telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular/mobile devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular/mobile service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "airplane mode" which disables access to the network. Unlike typical computers, many cellular/mobile telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular/mobile telephone models using forensic hardware and software.

8

Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

23. Following the issuance of this warrant, I will collect the **Target Device** and subject them to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

24. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within 90 days, absent further application to this court.

## PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

25. Other than as described above, the United States has not attempted to obtain this information by other means.

//
//
//
//
//
//
//
//
//
//

## **CONCLUSION**

25. Based on all of the facts and circumstances described above, there is probable cause to conclude that VERDUZCO used the **Target Device** to facilitate violations of 21 U.S.C. §§ 841 and 846.

26. Because the **Target Device** was promptly seized during the investigation of VERDUZCO's smuggling activities and has been securely stored, there is probable cause to believe that evidence of illegal activities committed by VERDUZCO continues to exist on the **Target Device**. As stated above, I believe that the date range for this search is from November 7, 2018 to February 8, 2019.

27. WHEREFORE, I request that the court issue a warrant authorizing law enforcement agents and/or other federal and state law enforcement officers to search the items described in Attachment A, and seize items listed in Attachment B, using the methodology described above.

I swear the foregoing is true and correct to the best of my knowledge and belief.

Jessica Hutnik, Special Agent
Drug Enforcement Administration

Subscribed and sworn to before me this 14th day of June, 2019.

HON. RUTH BERMÚDEZ MONTENEGRO
United States Magistrate Judge